IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED
FEB 8 2006
MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| OLIVIA TAYLOR | § § § | |
| V. | § § § | CIVIL ACTION NO.: 4:05CV02711 |
| HSBC MORTGAGE SERVICES, INC., SAFEGUARD PROPERTIES, INC., CHARLES OSBORN, KEY DESTINATIONS, INC , d/b/a REMAX HERITAGE, JOHN MARX, SR., JOHN MARX, JR., and JJ REALESTATE SERVICES, LP d/b/a TOTAL MORTGAGE SERVICES | § § § § § § § § § | JURY DEMAND |

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, Olivia Taylor, by and through her undersigned counsel, files the following Amended Complaint:

### *PARTIES*

1. Plaintiff Olivia Taylor is an individual.

2. Defendant HSBC Mortgage Corporation ("HSBC") is a Delaware corporation with offices located at 2700 Sanders Road, Prospect Heights, Illinois 60070-2701 that does business in Texas and has filed for domestication with the Texas Secretary of State, and has answered herein.

3. Defendant Safeguard Properties, Inc. ("Safeguard") is an Ohio corporation that does business in Texas and has answered herein.

4. Defendant **CHARLES OSBORN** is an individual who resides in Texas and

who can be served with process by delivering the Amended Complaint and Citation to him at his place of employment, ReMax Heritage, 4675 Sweetwater Blvd., Sugar Land, Texas, 77479. At all times Charles Osborn was acting as agent and/or employee for ReMax Heritage in connection with all actions alleged herein by him.

5. Defendant **KEY DESTINATIONS, INC., d/b/a REMAX HERITAGE** is a Texas Corporation which can be served with process by delivering the Amended Complaint and Citation to its registered agent Barbra Osborn at 4675 Sweetwater Blvd. Sugar Land, Texas 77479.

6. Defendant **JOHN MARX, SR.** is an individual who resides in Texas and who can be served with process by delivering the Amended Complaint and Citation to him at his place of employment JJ RealEstate Services, LP d/b/a Total Mortgage Services, 17711 E. Strack Drive, Spring, Texas, 77379-5215. At all times John Marx, Sr. was acting as an agent and/or employee for JJ RealEstate Services, LP d/b/a Total Mortgage Services in connection with all actions alleged herein by him.

7. Defendant **JOHN MARX, JR.** is an individual who resides in Texas and who can be served with process by delivering the Amended Complaint and Citation to him at his place of employment Total Mortgage Services, 17711 E. Strack Drive, Spring, Texas, 77379-5215. At all times John Marx, Jr. was acting as an agent and/or employee for JJ RealEstate Services, LP d/b/a Total Mortgage Services in connection with all actions alleged herein by him.

8. Defendant **JJ REALESTATE SERVICES, LP d/b/a TOTAL MORTGAGE SERVICES** ("Total Mortgage") is a Texas Limited Partnership and can be served with process by delivering the Amended Complaint and Citation to its duly authorized officer John Marx, Sr. at 17711 E. Strack Drive, Spring, Texas, 77379-5215.

## *JURISDICTION AND VENUE*

9. The Court has jurisdiction over the lawsuit under 28 U.S.C. §1331(c)(1) because the Plaintiff and the Defendants HSBC Mortgage Corporation and Safeguard Properties, Inc. are citizens of different states. In addition, Plaintiff seeks damages beyond the minimum amount required to establish jurisdiction in this court. Accordingly, venue before this court is appropriate under 28 U.S.C. §1391.

## *CONDITIONS PRECEDENT*

10. All conditions precedent have been performed or have occurred.

## *FACTS*

11. When the events that are the basis of this lawsuit occurred Olivia Taylor had been living at 1326 Peacham Court, Fresno, Fort Bend County, Texas 77545 (the "Property") for approximately five years. The Property is a very nice 3,000 square foot home in a Fort Bend County. The Property was owned by her father, James Paul Taylor. She had been renting the house from her father and she was in lawful possession of the Property when the events that are the basis of this lawsuit occurred. Defendant, HSBC, held the mortgage on the property and

when Mr. Taylor fell behind on his mortgage payments the Defendant, HSBC, foreclosed on the Property. The foreclosure took place sometime during the first week of January 2005.

12. Sometime after the foreclosure, but before February 4, 2005 and before initiating eviction proceedings, Defendants HSBC and Safeguard hired Osborn and Marx Sr. and Marx, Jr. as their agents to secure and protect the property and contends. Defendants or their agents changed the locks on the Property without providing notice to Mr. Taylor or Ms. Taylor. Defendants or Defendants' agents allowed Plaintiff's neighbor to have access to the Property as the Defendants and/or their agent photographed the contents.

13. Defendants and/or Defendants' agents, after changing the locks on the Property, did not lock and/or opened the Property and allowed others to enter the Property and steal Plaintiff's possessions.

14. Defendants or Defendants' agents also ransacked, or through their negligence, allowed others to ransack the Property and stole, or through their negligence allowed others to steal, most of Ms. Taylor's possessions including her furniture, some of her clothing and personal items, her computer with her business and personal information and some of her personal papers. They also took her business inventory stored in the house and on the premises, causing her to be unable to deliver on business commitments. Windows were broken and the front of a built in cabinet was ripped off so the large screen television could be removed. At some point they left the Property unlocked and allowed neighbors and others access to the Property. They also left laying out in the open some personal items that if seen

by her neighbors would cause Ms. Taylor severe embarrassment and humiliation. In fact Ms. Taylor believed at the time that her neighbors had seen those items and as a result she suffered feelings of severe embarrassment and humiliation. In the process of taking her possessions and ransacking the Property Defendant's agents also caused damage to the Property.

15. Defendant HSBC did not give Ms. Taylor any notice that they had foreclosed on the Property and that she was going to have to move. Defendant HSBC did not evict Ms. Taylor or even commence eviction proceedings until after February 10, 2005, more than a month after the foreclosure and after they had locked her out, ransacked the house, taken her belongings or by their actions allowed others to do so.

16. Olivia Taylor owns and operates her own business as an interior designer. As an interior designer, she had collected quite a bit of very nice personal property including antiques, paintings/pictures, furniture etc. Some of these items were one-of-a-kind items that cannot be replaced. She also used these items and the Property, to showcase her talents as an interior designer to her potential clients. The fair market value of the missing items is approximately $270,000.00.

17. Approximately February 4, 2005 when Olivia Taylor discovered that her home had been broken into and ransacked with most of her possessions taken she was extremely upset and emotionally distraught. Her emotional distress was then compounded when she learned that it was the Defendant HSBC who was responsible. She immediately called the

HSBC in an attempt to find out what was going on. Initially, the HSBC and its agents were somewhat responsive because they acknowledged that the Property was not set for eviction and had not even made it into their system for resale. Defendant HSBC put Plaintiff in contact with their agent, Defendant Safeguard, who in turn sent John Marx, Sr. and John Marx, Jr., who are both agents of Defendants Safeguard and HSBC, out to change the locks and allow Plaintiff access to her property. After Defendants became aware that Plaintiff had a large claim for stolen and damaged goods, Plaintiff and her representatives were met with stonewalling, rudeness and a total and callous disregard for the situation by Defendant. In fact, Defendants and their agents have continued to display a callous disregard for the needs of the Plaintiff and a total lack of concern and a total and complete lack of cooperation with Olivia Taylor in obtaining the return of her possessions. This attitude has continued to frustrate Ms. Taylor and exacerbated and prolonged her emotional distress. Even when the Defendants and/or their agents were contacted by Ms. Taylor's attorney, the response has basically been to refuse to tell Ms. Taylor what happened to her possessions or take any action to assist in the return of her possessions or to display any concern for their return.

18. As of the date this suit has been filed Defendants and their agents have failed and refused to return Ms. Taylor's belongings and completely refused to assist her in finding them. In fact, Defendants' and/or their agents have intentionally taken steps to prevent Olivia Taylor from obtaining information relevant to the location of her possessions. Specifically, either Defendants or Defendants' agents instructed John Marx, Sr. and John Marx, Jr., that

they were not to give Olivia Taylor any information regarding what happened to her possessions when they went out to allow her access on February 4 or 5, 2005.

## CAUSES OF ACTION

### CONVERSION

19. At the time that Defendants or Defendants' agents took Ms. Taylor's personal property the personal property was owned and possessed by Ms. Taylor. She had the right to immediate possession of the personal property. Defendants had no claim or right to the personal property and Defendant did not have Plaintiff's consent when Defendants, through their agents, wrongfully exercised dominion or control over Plaintiff's personal property. Plaintiff demanded return of the property on more than one occasion, but received no response. As result Plaintiff suffered damages consisting of the loss of the value of the personal property of $270,000.00.

20. Defendants and/or Defendants' agent actions were committed intentionally and with malice and/or gross negligence causing injury to Plaintiff. Defendants authorized the acts complained of herein and the acts were committed on behalf of the Defendants. In addition, Defendants intentionally ratified the wrongful acts complained of herein by Defendants' complete refusal to assist Plaintiff in finding and retrieving her personal property after she informed Defendants of the taking of the property by Defendants' agents. Therefore, exemplary damages should be assessed against all Defendants.

**THEFT**

21. At the time that Defendants or Defendants' agents took Ms. Taylor's personal property the personal property was owned and possessed by Ms. Taylor. She had the right to immediate possession of the personal property. Defendants had no claim or right to the personal property and Defendants did not have Plaintiff's consent when Defendants, through their employees or agents, unlawfully stole Plaintiff's personal property with the intent to deprive Plaintiff of the property. As result Plaintiff suffered damages consisting of the loss of the value of the personal property of approximately $270,000.00 and Defendant is liable to Plaintiff for that amount plus up to an additional $1,000.00 pursuant to Tex. Civ. Prac. & Rem. Code §134.005.

22. Defendants and/or Defendants' agent's actions were committed intentionally and knowingly and with malice and/or gross negligence causing injury to Plaintiff. Defendants authorized the acts complained of herein and the acts were committed on behalf of the Defendants. In addition, Defendants intentionally ratified the wrongful acts complained of herein by Defendants' complete refusal to assist Plaintiff in finding and retrieving her personal property after she informed Defendants of the taking of the property by Defendants' agents. Therefore, exemplary damages should be assessed against Defendants.

## INVASION OF PRIVACY

23.     Defendants or Defendants' agent's act of wrongfully entering Olivia Taylor's home without her knowledge or consent and ransacking her belongings and private papers was a highly offensive invasion of Plaintiff's privacy. As a result of the invasion of her privacy, Plaintiff suffered severe mental distress and mental anguish. Plaintiff's severe emotional distress and mental anguish was evidenced by feelings of severe embarrassment and humiliation, crying spells, emotional outbursts, stress and anxiety, headaches, stomach disorders and difficulty sleeping.

24.     Plaintiff is seeking damages for both past and future emotional distress and mental anguish. Plaintiff will continue to suffer future emotional distress and mental anguish as a result of the loss of many very personal and important items that she will continue to miss far into the future. The theft of Plaintiff's business records and business inventory has caused Plaintiff past and future emotional distress and mental anguish because she has suffered a loss in business income, a loss in business reputation and an interruption in her business. In addition one of the items stolen was Plaintiff's personal computer that contained information regarding her financial affairs and identity. The theft of her computer as well as the ransacking and theft of some of her personal papers makes her vulnerable to identity theft at any time. This continuing threat of identity theft will be a cause for mental anguish far into the future.

25. Defendants and/or Defendants' agent's actions were committed intentionally and knowingly and with malice and/or gross negligence causing injury to Plaintiff. Defendants authorized the acts complained of herein and the acts were committed on behalf of the Defendants. In addition, Defendants intentionally ratified the wrongful acts complained of herein by Defendants' complete refusal to assist Plaintiff in finding and retrieving her personal property after she informed Defendants of the taking of the property by Defendants' agents. Therefore, exemplary damages should be assessed against Defendants.

## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT (DTPA)

26. Defendants and their agents' acts of knowingly and intentionally wrongfully locking Olivia Taylor out of the Property, ransacking the Property, taking her possessions, failing to give her notice, failing to properly secure the Property, allowing other individuals into the Property without Olivia Taylor's permission, callously refusing to assist her in obtaining the return of her Property, actively trying to prevent Plaintiff from obtaining information that may have helped her in finding her possessions, all constitute unconscionable actions or course of action by Defendants. Therefore, Defendants are liable to Olivia Taylor under DTPA §17.50(d).

27. Defendants is liable under the DTPA §17.50(a)(2) for Defendants' breach of the implied warranty of quiet enjoyment. By wrongfully locking out Olivia Taylor from her

home and removing her possessions, Defendants constructively evicted her. Defendants' actions clearly show an intention on the part of Defendants that Olivia Taylor would no longer be allowed to enjoy the premises. Locking her out and removing her possessions without her permission substantially interfered with her use and enjoyment of the Property for the purpose that it was let. In fact, these acts permanently deprived her of the use and enjoyment of the Property. Within a reasonable time after the acts of the Defendants, Olivia Taylor left the premises.

28.     As a result of Defendants' actions, Plaintiff has suffered $270,000.00 in economic damages. Pursuant to DTPA §17.50(b)(1) Plaintiff is also entitled to an award for mental anguish of up to three times the amount of economic damages or $810,000.00. However, because the Defendant acted intentionally Plaintiff is entitled to an award of up to three times the mental anguish plus economic damages or $3,240,000.00. Therefore, Plaintiff is seeking $3,240,000.00.

29.     In addition, Pursuant to DTPA §17.50, Defendants are also liable to Plaintiff for court costs, attorney fees (equal to approximately $6,000.00 at the time this suit is filed), pre-judgment interest and post-judgment interest.

## **WRONGFUL LOCKOUT**

30.     At the time that Defendants wrongfully locked Olivia Taylor out of the Property Olivia Taylor was in lawful possession of the Property. Defendants did not send any notice to her as required by Texas Property Code §92.0081 and Defendants had not pursued a forcible entry and detainer action. Therefore, pursuant to Texas Property Code §92.0081(h),

Defendants are liable to Plaintiff for one month's rent of $1,200.00 plus $500.00 plus court costs and attorney fees. In addition, Defendants are liable for an additional one month's rent of $1,200.00 pursuant to Texas Property Code §92.0081(i).

**TRESPASS**

31. At the time that Olivia Taylor was locked out of the Property and her possessions were taken, Olivia Taylor had a lawful right to possess the Property. In spite of this right, Defendants and/or Defendants' agents knowingly, voluntarily and intentionally entered the Property without permission. Their acts of locking Olivia Taylor out of the Property and taking her possessions caused injury to her right of possession of the Property.

32. As a result of the trespass Plaintiff suffered economic damages in the amount of the value of the loss of use of the Property, the loss of the value of the Property or in the alternative, nominal damages.

33. As a result of the trespass Plaintiff suffered severe emotional distress and mental anguish. Plaintiff's sever emotional distress and mental anguish was evidenced by feelings of severe embarrassment and humiliation, crying spells, emotional outbursts, stress and anxiety, headaches, stomach disorders and difficulty sleeping.

34. Defendants and/or Defendants' agent's actions were committed intentionally and with malice and/or gross negligence causing injury to Plaintiff. Defendants authorized the acts complained of herein and the acts were committed on behalf of the Defendants. In addition, Defendants intentionally ratified the wrongful acts complained of herein by Defendants' complete refusal to assist Plaintiff in finding and retrieving her personal

property after she informed Defendants of the taking of the property by Defendants' agents. Therefore, exemplary damages should be assessed against Defendants.

**NEGLIGENCE**

35. In the alternative, Defendants wrongfully took possession of the Property and were in possession and control of Plaintiff's personal property. Defendants negligently failed to lock the front door for some period of time, allowing unauthorized persons access to the Property which led to the loss of Plaintiff's property.

36. Defendants were negligent in failing to control their agents who wrongfully locked Olivia Taylor out of the Property, ransacked the Property and Olivia Taylor's possessions, removed her possessions and failed to give her notice that they were going to take these actions or that they had taken these actions. In addition, once Defendants were informed that agents working for them had committed these acts, Defendants had a duty to assist Olivia Taylor in obtaining the return of her possessions. Defendants were negligent by refusing to assist her in obtaining the return of her Property.

37. Defendants and/or Defendants' agent's actions were committed intentionally and with malice and/or gross negligence causing injury to Plaintiff. Defendants authorized the acts complained of herein and the acts were committed on behalf of the Defendants. In addition, Defendants intentionally ratified the wrongful acts complained of herein by Defendants' complete refusal to assist Plaintiff in finding and retrieving her personal property after she informed Defendants of the taking of the property by Defendants' agents. Defendants' total and callous disregard for the health and property of Plaintiff rises to the

level of outrageous, malicious and otherwise morally culpable conduct. Exemplary damages should be assessed against Defendants to punish Defendants for the conduct and to deter Defendants and others from engaging in similar conduct in the future.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

38. Defendants or Defendants' agents conversion and theft of Plaintiff's belongings, invasion of Plaintiff's privacy, wrongful lockout and trespass were intentional or reckless acts that were the proximate cause of Plaintiff's severe emotional distress and mental anguish. Plaintiff's severe emotional distress and mental anguish was evidenced by feelings of embarrassment and humiliation, crying spells, emotional outbursts, stress and anxiety, headaches, stomach disorders and difficulty sleeping. Defendants' total and callous disregard for the health and property of Plaintiff as exhibited by Defendants' behavior after Defendants were informed that the acts had taken place was extreme and outrageous conduct that exacerbated and prolonged Plaintiff's severe emotional distress.

39. Defendants and/or Defendants' agent's actions were committed intentionally and with malice and/or gross negligence causing injury to Plaintiff. Defendants authorized the acts complained of herein and the acts were committed on behalf of the Defendants. In addition, Defendants intentionally ratified the wrongful acts complained of herein by Defendants' complete refusal to assist Plaintiff in finding and retrieving her personal property after she informed Defendants of the taking of the property by Defendants' agents. Defendants' total and callous disregard for the health and property of Plaintiff, both in the acts complained of herein as well as after Defendants were informed that the acts had taken

place, rises to the level of extreme, outrageous, malicious and otherwise morally culpable conduct. Exemplary damages should be assessed against Defendants to punish Defendants for the conduct and to deter Defendants and others from engaging in similar conduct in the future.

## *ATTORNEY FEES*

40. Defendants' actions have made it necessary for Plaintiff to employ the undersigned attorney. Plaintiff, therefore, seeks her reasonable attorneys' fees as provided for under the causes of action listed herein.

## *PRAYER*

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiffs have judgment against Defendants for the following relief:

1. Plaintiff demands a jury trial; and
2. $270,000.00 for the loss of Plaintiff's property; plus
3. $2,970,000.00 pursuant to DTPA §17.50(b)(1); plus
4. $1,000.00 in statutory additional damages pursuant to Tex. Civ. Prac. & Rem. Code §134.005(a)(1).
5. an additional $1,000,000.00 in exemplary damages; plus
6. $500,000.00 for intentional infliction of emotional distress; plus
7. $500,000.00 for past mental anguish; plus
8. $100,000.00 for future mental anguish; plus

9. $2,900.00 for wrongful lockout; plus

10. $500,000.00 for negligence; plus

11. Reasonable attorney fees; plus

12. Prejudgment interest as provided by law; plus

13. Post-judgment interest as provided by law; plus

14. Costs of suit; plus

15. Such other and further relief to which Plaintiffs may be justly entitled;

Respectfully submitted,

*Tom F. Coleman*

Tom F. Coleman
State Bar No. 04572000
402 Main Street, Suite 3 North
Houston, Texas 77002
(713) 225-6900
(713) 225-0264 - *fax*

*ATTORNEY FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following counsel of record on this 8th day of February, 2006:

Ronald C. Muller               *Via Facsimile: (713) 271-2112*
Gill, Revack & Samaan
6575 West Loop South, Suite 600
Bellaire, Texas 77401
***Attorney for Defendant Safeguard Properties, Inc.***


David S. Curcio                *Via Facsimile: (713) 757-0178*
Boudreax, Leonard, Hammond & Curcio, P.C.
909 Fannin, Suite 2350
Houston, Texas 77010
***Attorney for Defendant HSBC Mortgage Services, Inc.***

*Tom F. Coleman*

Tom F. Coleman